UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Edward Charles Furlong, III

    v.                                      Civil No. 10-cv-003-SM

Terry Miller, District Ranger,
United States Department of
Agriculture, United States
Forest Service, et al.[1]

**REPORT AND RECOMMENDATION**

Before the court is Edward Furlong's motion for a preliminary injunction (document no. 2). Plaintiff has filed a complaint (document no. 1) alleging that his civil rights have been violated by the defendants, and that the defendants have violated the provisions of the Americans with Disabilities Act, 42 U.S.C. § 12132, et seq. ("ADA"). Plaintiff's motion for preliminary injunction seeks to have this Court enjoin defendants from hindering access to a designated snowmobile trail in the White Mountains National Forest ("WMNF") via a spur trail that

---

[1] In addition to Terry Miller, Furlong has named the United States Department of Agriculture United States Forest Service ("USFS"), USFS Forest Supervisor Tom Wagner, USFS Law Enforcement Officer Mark Mageles, the Town of Bartlett, New Hampshire, Bartlett Recreational Department employee Annette Libby, and Bartlett Selectman Doug Garland as defendants to this action.

runs over WMNF land from plaintiff's property. An evidentiary hearing was held before me on plaintiff's motion on February 26, 2010.

## Background

Furlong owns Lil' Man Snowmobile Rentals ("LMSR") and the property on which it sits on Route 302 in Bartlett, New Hampshire. Furlong's property abuts the WMNF. Furlong testified that he has been using a 75-foot spur trail that runs from the southeast corner of his property to a designated snowmobile trail in the WMNF (hereinafter the "designated trail") to provide his customers access to that trail. Furlong testified that the spur trail is the most direct, convenient and safest way for his customers to access the designated trail.

Furlong stated at the hearing that he has been using the spur trail for fourteen years, and that the spur trail has been used by previous owners of his property since at least 1890.[2] On December 21, 2009, however, while Furlong had customers out on the WMNF trails on his snowmobiles, defendant USFS Forest Ranger

---

[2] A witness for the defendants testified that the spur trail has only existed since 2004 or 2005. While the distinction may ultimately be relevant to the resolution of this case on its merits, I need not resolve the difference here, as the length of time the trail has existed does not bear on my ruling on Furlong's request for a preliminary injunction.

Terry Miller had boulders placed on the trail close to Furlong's property line, blocking snowmobile access to the designated trail over the spur trail.  Furlong testified that as a result of the boulder placement, at least one disabled customer of his had difficulty returning to Furlong's property after snowmobiling on the trails that day.  Since the boulders have been placed, Furlong's snowmobile rental customers have had to travel approximately a mile down Route 302 to enter the WMNF designated trail via a public parking lot that the witnesses referred to as the "Bear Notch" location.  Two other snowmobile rental businesses in Bartlett also access the trails from the Bear Notch location.

Furlong has asserted, in his memorandum submitted in support of his motion for preliminary injunction, that the Bear Notch trailhead is too small to adequately accommodate his business, and that he will therefore lose business if required to use that location, presumably because he will have to operate at a smaller volume to make the location feasible.  Furlong did not testify as to the actual size or dimensions of the Bear Notch location. Furlong stated he is not aware of the specifics of how his customers are accessing the designated trail at this time, as he

stated he has turned the operation of his business over to another person, and refuses to go to the Bear Notch location himself. Furlong claims that he has lost business as a result of the inconvenience of having to travel to the Bear Notch site to get onto snowmobiles. No evidence was introduced as to the degree or nature of losses Furlong has suffered since the December 21, 2009 placement of the boulders or as to what losses are anticipated going forward.³ Furlong alleged in his motion for a preliminary injunction that he will suffer emotional and physical hardships without the requested injunction, but no evidence supporting that assertion was introduced at the hearing.

---

³Furlong submitted with his petition an email from the customer who was unable to return to LMSR on the spur trail on December 21, 2009 due to the placement of the boulders during his snowmobile trip. That customer stated he did not intend to return to LMSR based on the lack of direct access to the designated WMNF trail. The email states that the customer, who is disabled, chose LMSR because of its proximity and direct access to the WMNF trails, as it is difficult for him to walk on uneven terrain. While the Court has no reason to doubt the veracity of the statements made in the email, the email itself is insufficient to establish business losses to LMSR because neither the email nor any other evidence demonstrates that any individual intending to rent from LSMR in the future has changed plans.

**Discussion**

A preliminary injunction cannot issue unless the moving party satisfies certain requirements for such relief. See <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 18-19 (1st Cir. 1996) (plaintiff bears burden of proof for preliminary injunction). Those requirements are: "(1) a likelihood of success on the merits; (2) irreparable harm to the plaintiff should preliminary relief not be granted; (3) whether the harm to the defendant from granting the preliminary relief exceeds the harm to the plaintiff from denying it; and (4) the effect of the preliminary injunction on the public interest." <u>Rio Grande Cmty. Health Ctr. v. Rullan</u>, 397 F.3d 56, 75 (1st Cir. 2005).

I.  <u>Likelihood of Success on the Merits</u>

Furlong generally asserts violations of his civil rights.[4] Construing Furlong's claims liberally, because he is acting pro

---

[4] Furlong's pleadings state that his asserted cause of action arises under 42 U.S.C. § 1983, which authorizes suits against individuals who violate a plaintiff's constitutional rights while acting under color of state law. Because Furlong's claims relevant to his motion for a preliminary injunction are against individuals acting under color of federal law, those claims arise under <u>Bivens v. Six Unknown Fed. Agents</u>, 403 U.S. 388 (1971), which authorizes suits against individuals who violate a plaintiff's constitutional rights while acting under color of federal law, and I will so construe them.

se, see Ahmed v. Rosenblatt, 118 F.3d 886, 80 (1st Cir. 1997), I find that Furlong, at the February 26, 2010 evidentiary hearing, attempted to demonstrate that he was likely to succeed on the following claims:

1. The defendants violated his Fifth and Fourteenth Amendment rights by denying him the use of property over which he holds an easement or other right of use without due process of law.

2. The defendants violated his Fifth Amendment equal protection rights by discriminating against him in closing the spur trail, when other businesses in the area are able to use spur trails from their property, due to his past as a homeless person, alcoholic, and felon.

3. Furlong has been improperly denied permission to use the spur trail by the USFS defendants.

4. The defendants have violated the ADA by disallowing the safest and most convenient way for plaintiff's disabled customers to access his property.

I consider each of these claims in turn and conclude, as explained below, that Furlong has not demonstrated a likelihood

of success on the merits of his claim.

    A.   <u>Due Process Claim</u>

Furlong claims that he has a protectable property interest in use of the spur trail either because he has a prescriptive easement over that property due to both his continuous use of the spur trail for fourteen years, and the use of the trail by previous owners of his property.  To establish that he has a prescriptive easement under New Hampshire law, Furlong must show that he used the spur trail for twenty years, and that the use was "adverse, continuous, and uninterrupted in such a manner as to give notice to the respondents that an adverse claim was being made to it."  <u>Sleeper v. Hoban Family P'ship</u>, 157 N.H. 530, 536, 955 A.2d 879, 885 (2008); <u>see also</u> <u>United States v. Certain Land</u>, 247 F. Supp. 932, 934 (D.N.H. 1965) (acknowledging that demonstration of prescriptive easement requires showing of twenty years of adverse use).  Furlong conceded at the February 26 hearing that his adverse use of the spur trail has lasted only fourteen years.  Accordingly, Furlong has not established a prescriptive easement over the spur trail obtained by his own adverse use.

Furlong attempted to bolster his claim for a prescriptive

easement by showing that, historically, owners of his property had direct access from the property to the designated snowmobile trail. Furlong offered some evidence that pine trees presently on his land were once considered to be the area "gateway" to the WMNF, and that previous owners of the property had advertised direct access to WMNF trails from the property.[5] Furlong failed to introduce evidence to establish that any previous owner actually used the particular spur trail at issue in this case, or that if such use occurred, it was of such a nature as would create an enforceable property right to use the spur trail that would accrue to Furlong.

B.  Equal Protection Claim

Furlong argues that he has been denied his Fifth Amendment right to the equal protection of the laws as defendants have treated him differently than other similarly situated business owners in the Bartlett area because he has previously been homeless, alcoholic, and a convicted felon. The Equal Protection clause of the Fifth Amendment guarantees that "all persons

---

[5] One brochure entered into evidence by Furlong advertised "[a]ll kinds of Mountain trips and trails, many beginning right from the Motel." Pl. Ex. 3. Another brochure purportedly contained a picture of the gateway pine trees on Furlong's land. Pl. Exs. 3 & 4.

similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); see Toledo v. Sanchez, 454 F.3d 24, 33 (1st Cir. 2006).  Therefore, in order to establish a claim for an equal protection violation, Furlong would have to allege that the defendants gave differential treatment to persons who were similarly situated to him, but who were not members of the "previously homeless," "alcoholic," or "convicted felon" class.  Furthermore, Furlong would have to demonstrate that "previously homeless" people, "alcoholics," or "convicted felons" are a distinct group of people presumptively discriminated against and therefore protected by the equal protection clause of the Fifth Amendment, and that he was subjected to invidious discrimination on the basis of his membership in that class.  See Overton v. Bazzetta, 539 U.S. 127, 138 (2003) (The Equal Protection Clause protects against invidious discrimination based on membership in a protected class).

   I take Furlong at his word that he is a member of a class of previously homeless people, recovering alcoholics, or convicted felons.  Assuming, aruendo, that such class membership entitles Furlong to protection from discrimination on the basis of his membership in that class, I find that he has failed to

9

demonstrate that any defendant to this action discriminated against him based on that membership.  There is no evidence before the Court, aside from Furlong's unsupported assertions, that any defendant to this action discriminated against him, much less that they did so on any improper basis.  To the extent that Furlong alleges that his competitors were given preferential treatment by the defendants, he has failed to demonstrate that such preferential treatment, if true, was discriminatory or otherwise improper as, among other things, he has not established that his competitors were, in fact, similarly situated to him.  He has alleged that a cross-country ski business is allowed to use authorized spur trails, and that they are similarly situated to him because they both rent cabins and because Furlong devised a means to transport his snowmobiles over the spur trail on skis.  These assertions, however, do not account for the difference generally between snowmobile rentals and cross-country ski rentals sufficiently to allow me to find that his competitors were similarly situated.  Further, as discussed below, Furlong, unlike his competitors, did not hold a special use permit for using a spur trail, while the cross-country ski businesses did.  Furlong has not, therefore, established a violation of his equal protection rights.

C.   Special Use Permit

At the February 26 hearing, Furlong acknowledged that the WMNF Land and Resource Management Plan[6] prohibits the USFS from granting him permission, in the form of a Special Use Permit ("SUP"), to use WMNF land if such permission would give Furlong or LMSR, as a commercial enterprise and private entity, exclusive use of the spur trail.  Furlong conceded that, while he would welcome members of the public who wanted to cross his property to access the spur trail, he has not created any deeded right of way over his land for the benefit of the public.

The testimony at the hearing was unclear as to whether or not Furlong has properly applied for an SUP to access the designated trail over his spur trail.  The evidence was clear, however, that Furlong has not received such a permit.  To the contrary, on December 15, 2009, Miller issued Furlong an SUP to allow him to conduct "outfitter guide trips," which are guided tours of the WMNF.  That permit, submitted as Defendant's Exhibit F-F, specifically states: "This approval is specifically for outfitter guide trips only.  Access to the snowmobile trail system must be gained at one of the authorized public

---

[6]The WMNF Land and Resource Management Plan was discussed at the hearing, but was not introduced as a full exhibit.

trailheads." Def. Ex. F-F. In the application for the use permit, in fact, Furlong specifically identifies the "Bear Notch Rd. and loop trails" as the location of his guided tours. Id.

Furlong has not alleged that he was denied the ability to apply for a special use permit to use the spur trail to access the designated snowmobile trail, or that such an application was actually denied on an improper basis. Furlong has failed to establish that defendants improperly denied him an SUP to use the spur trail, or that he was otherwise entitled to use that trail without such a permit.

D.   ADA Claim

Furlong claims that he, as a business owner, is obligated to provide certain access to his facilities for disabled people. Furlong asserts that the defendants' actions have prevented him from providing his disabled customers with the most convenient and safest way of accessing his services. Furlong has not shown, however, that any disabled person has been denied access to any of his products or services that are available to non-disabled people.

Furthermore, as the federal defendants state in their objection to the motion for a preliminary injunction (document no. 10), Furlong has not asserted any claim under the ADA stating

12

a violation of his personal rights, and he does not have standing to assert those rights on behalf of others who may be protected by the statute.  See McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 69 (1st Cir. 2003) (ADA does not permit private plaintiffs to bring claims to vindicate other people's injuries).

## II.  Irreparable Harm

Although the requested preliminary injunction could be denied based only on Furlong's failure to prove that he is likely to succeed on the merits of his underlying claims, Furlong is unable to establish irreparable harm.  "[A] federal court cannot dispense with the irreparable harm requirement in affording injunctive relief."  Gately v. Massachusetts, 2 F.3d 1221, 1232 (1st Cir. 1993).  In support of his assertion of irreparable harm, Furlong testified that he believes he has lost business, or will lose business in the future, and will suffer unspecified emotional and physical hardship if he is not able to use the spur trail to access the designated snowmobile trails.  Furlong has not, however, provided any evidence, except the email, which did not demonstrate lost revenue, to support this assertion.

Furthermore, "'[i]rreparable injury' in the preliminary injunction context means an injury that cannot adequately be compensated for either by a later-issued permanent injunction,

after a full adjudication on the merits, or by a later-issued damages ready." Rio Grande Cmty. Health Ctr., 397 F.3d at 76. Furlong has not alleged any injury that is not compensable by a damages award, in the event he can prove his case and demonstrate that he has suffered injury as a result of defendants' actions. Any harm experienced by Furlong, therefore, is not irreparable. As Furlong has not demonstrated that he will suffer irreparable harm, "that fact alone is dispositive." EEOC v. Astra U.S.A., Inc., 94 F.3d 738, 746 (1st Cir. 1996).

III. Other Preliminary Injunction Factors

Because Furlong has failed to demonstrate that he is likely to succeed on the merits of his complaint, or that irreparable harm will occur in the absence of an injunction, I need not undertake an analysis of the remaining preliminary injunction factors.

## Conclusion

For the foregoing reasons, I propose that the district judge enter findings consistent with this report, and I recommend that the motion for a preliminary injunction be denied.

Any objections to this report and recommendation must be filed within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the

right to appeal the district court's order. See <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date: March 15, 2010

cc: Edward C. Furlong, pro se
T. David Plourde, Esq.
999 Douglas M. Mansfield, Esq.
William G. Scott, Esq.

JRM:jba